DECISION AND JUDGMENT ENTRY
This appeal comes to us from a judgment of conviction and imposition of sentence issued by the Wood County Court of Common Pleas following a jury's return of guilty verdicts on charges of rape and kidnaping. Because we conclude that the verdicts were not against the manifest weight of the evidence, we affirm. The determination, however, that appellant be classified as a sexual predator is reversed.
On October 6, 1999, the Wood County Grand Jury indicted appellant, Kenneth Harper, on one count of rape, in violation of R.C. 2907.02(A)(2), and one count of kidnaping, in violation of R.C. 2905.01. Appellant pled not guilty to the charges which stemmed from incidents involving his former girlfriend, "Jane."[1] At trial, the following evidence was presented. Jane testified that she had recently ended a long standing relationship with appellant, who was the father of her infant son. Because the breakup had been fairly amicable, she would permit him to spend the night in her apartment, in order to have time with their son. Appellant would sometimes drive her to work and then watch the baby. Jane stated, however, that the couple had not had sexual relations for at least six weeks prior to September 5, 1999.
On that date, after attending church, appellant told Jane that he was planning to return to Indiana, where his mother lived. Appellant asked to stay overnight, but Jane refused, reminding him that he was not to stay over anymore. Jane testified that appellant repeatedly called her that evening. At 2:30 a.m. on September 6, 1999, she relented, telling appellant that he could come over one last time. Appellant arrived at the apartment and went to sleep on the couch with the baby.
Jane then testified that at about 6:00 a.m. she was awakened by appellant who was holding a rag laced with some type of chemical on her nose and mouth. When she attempted to struggle, appellant told her to shut up. Appellant continued trying to put the rag on her face, holding his other hand on her throat. At some point during the struggle, Jane felt with her hand the blade of a knife which was in the bed next to her. When she asked appellant if he was going to kill her, he replied "no, I'm going to fuck you." Jane testified that she struggled a little more, and then tried to calmly talk to him, since she was afraid for herself and her baby. Appellant, nevertheless, assured her that she and the baby would not be hurt.
Still fearful, however, she finally stopped struggling and laid still while appellant had intercourse with her. After appellant was finished, he brought the phone to her and told her to call the police. Jane stated she was too frightened to call them at that point. Rather, she told appellant to call his pastor to talk about his problems. Appellant held her for a time and then told her he wanted to "make love" to her again.
According to Jane, appellant had intercourse with her a second time. He once more told her to call the police and tried to give her the knife. Although appellant told her he would not hurt her anymore, the victim stated that she did not take the knife because she thought it was a trick and he might try to stab her with it. Jane stated that she suffered bruises on her neck and mouth and a swollen lip and face. Appellant, noticing the bruises on her neck, allegedly appeared to be crying and said "look what I did to you."
Jane testified that appellant then went into the kitchen and picked up a labeled jug which still contained some clear ammonia. She stated that she did not keep ammonia in her apartment and did not know how it got there. When she began choking again, appellant gave her a glass of water. She could not drink it, however, because it burned her throat and lips. Appellant then allegedly put the knife, the rag, and the ammonia bottle in a plastic bag and said he was going to get rid of it. Jane again told him he needed help, and since the police would need everything that was used, he should not throw it away.
Appellant made a phone call and told her that the pastor was not home. Appellant then said he was going to put the bag in the car to take with him when he turned himself into the police. After more conversation, appellant, while crying, picked up the baby and told him he loved him. Appellant, then took the bag and left the apartment, taking the portable phone with him. Jane locked the door and called "911" on a cell phone, but stated that she could not stay on the line because appellant was returning. This tape was played for the jury.
When appellant returned, Jane let him in so that he would be there when the police arrived. Appellant went downstairs to smoke a cigarette. There, he was apprehended by police. An officer took Jane to the hospital where an examination and rape kit were completed. In addition to the neck and face bruising, Jane suffered abrasions to her vaginal area and cuts to her hands. She could not remember how her hands got cut. Her medical records, along with the testimony of the emergency room doctor and nurse, corroborated Jane's injuries. The baby was also examined, but was unhurt.
Several police officers testified as to photos and evidence at the scene. The officer who first arrived at the apartment said that Jane appeared to be very shaken and afraid. She had visible scratch marks on her face and swelling of her bottom lip. The officers testified that they could detect no ammonia odor either in the apartment or on Jane. Two washcloths or "rags" found in the bedroom did not smell of ammonia. Testimony revealed that since ammonia evaporates very quickly, it was not unusual for the smell to have dissipated. One officer testified that he found the knife on the floor of the back seat of appellant's car. At appellant's direction, the officer retrieved the ammonia bottle, then empty, from the garbage bin where appellant had thrown it. The police also took sheets from the bed which had blood stains on them in an area where appellant indicated he laid next to Jane.
Appellant did not testify. The tape of appellant's statement to police, however, was played for the jury. In that statement, appellant admits having intercourse with Jane, but denies that he raped her. Appellant stated several times that Jane never told him to stop and, in fact, encouraged him to continue, even though she was expressing discomfort. Appellant stated that intercourse had often been painful for Jane due to "female problems." He denied threatening her with the knife and did not know how it got into the bedroom.
Appellant admitted taking the ammonia bottle out to the trash to keep it from "harming his child," but denied emptying it. Later, appellant said that Jane had been splashing the ammonia around the apartment, so he had disposed of it — again, to protect his child. Still later, appellant said that he had told Jane that he would take the empty bottle to the car, but instead, threw it in the dumpster. Appellant could not explain why he threw the bottle away. He also acknowledged that, prior to the officers' arrival, he and Jane were going to the police station, but said he did not really know why since he did nothing to hurt her. Appellant also had small cuts on his hands, but could not remember how those cuts occurred.
The jury found appellant guilty of both charges. The court, however, concluded that the rape and kidnaping charges were allied offenses of similar import and imposed sentences only on the rape offense. A hearing was then held and appellant was found to be a sexual predator.
Appellant now appeals that conviction, setting forth the following three assignments of error:
"FIRST ASSIGNMENT OF ERROR
 "DEFENDANT-APPELLANT'S CONVICTION FOR RAPE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
"SECOND ASSIGNMENT OF ERROR
 "DEFENDANT-APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, § 10 OF THE CONSTITUTION OF THE STATE OF OHIO.
"THIRD ASSIGNMENT OF ERROR
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN THAT IT WAS NOT SHOWN BY CLEAR AND CONVINCING EVIDENCE THAT HE SHOULD BE CLASSIFIED AS A SEXUAL PREDATOR PURSUANT TO OHIO REVISED CODE SECTION 2950.09 AND AS FURTHER DEFINED IN OHIO REVISED CODE SECTION 2950.01(E)."
 I.
Appellant, in his first assignment of error, argues that the conviction for rape was against the manifest weight of the evidence.
When reviewing a conviction under the manifest weight standard, an appellate court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Martin (1983), 20 Ohio App.3d 172, 175. See also, State v. Thompkins
(1997), 78 Ohio St.3d 380, 387. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin, supra.
R.C. 2907.02 states in pertinent part that
 "(A)(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
"* * *
 "(C) A victim need not prove physical resistance to the offender in prosecutions under this section.
"* * *
 "(G) It is not a defense to a charge under division (A)(2) of this section that the offender and the victim were married or were cohabiting at the time of the commission of the offense."
In this case, it is undisputed that appellant had sexual intercourse with the victim. The issue is whether or not that contact was consensual. Upon consideration of the victim's testimony and physical injuries, the medical testimony and evidence, and the officers' descriptions of the victim's demeanor and appearance, we cannot say that the jury lost its way in finding appellant guilty of rape. Therefore, the verdict was not against the manifest weight of the evidence.
Accordingly, appellant's first assignment of error is not well-taken.
 II.
Appellant, in his second assignment of error, contends that he was denied effective assistance of counsel since, at counsel's recommendation, appellant did not testify at trial.
In order to prove ineffective assistance of counsel, a defendant must show 1) that defense counsel's representation fell below an objective standard of reasonableness and 2) that counsel's deficient representation was prejudicial to defendant's case. State v. Bradley (1989),42 Ohio St.3d 136, paragraph two of the syllabus. See also Strickland v.Washington (1984), 466 U.S. 668, 694. Counsel's actions which "might be considered sound trial strategy," are presumed effective. Strickland,supra, at 687.
In this case, appellant's version of the events was presented by way of his recorded statement to police. In that statement, appellant denied the rape, claiming instead that it was consensual sex. Thus, appellant was tactically able to put his version of events before the jury without submitting to cross-examination. Furthermore, the testimony and medical evidence overwhelmingly indicated that the victim did not consent to appellant's actions. Consequently, we cannot say that counsel's action was deficient in not putting appellant on the stand to testify. Therefore, appellant has failed to establish a valid claim for ineffective assistance of counsel.
Accordingly, appellant's second assignment of error is not well-taken.
 III.
Appellant, in his third assignment of error, asserts that the trial court erred in determining that he is a sexual predator. We agree.
R.C. 2950.09.(B)(3) provides that a trial judge must review all the evidence and testimony and, utilizing a clear and convincing standard of proof, determine whether or not a defendant is a sexual predator. See alsoState v. Cook (1998), 83 Ohio St.3d 404, 408.[2] R.C. 2950.01(E) defines a "sexual predator" as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses."
Clear and convincing evidence is "that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."Cincinnati Bar Assn. v. Massengale (1991), 58 Ohio St.3d 121, 122. If a trial court's determination is supported by evidence legally sufficient to meet the clear and convincing standard of proof, it will not be disturbed by a reviewing court. State v. Anderson (1999),135 Ohio App.3d 759, 763.
R.C. 2950.09(B)(2) states that to determine whether or not an offender is a sexual predator, the judge
 "shall consider all relevant factors, including, but not limited to, all of the following:
"(a) The offender's age;
 "(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 "(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 "(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 "(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 "(g) Any mental illness or mental disability of the offender;
 "(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 "(i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 "(j) Any additional behavioral characteristics that contribute to the offender's conduct."
A trier of fact may look at a defendant's past behavior as an important indicator of future propensity. See Kansas v. Hendricks (1997),521 U.S. 346, 358. The Ohio Rules of Evidence do not strictly apply at a sexual predator determination hearing which is civil in nature. State v.Cook (1998), 83 Ohio St.3d 404, 425. Accordingly, a trial court in making a sexual predator determination may rely upon reliable hearsay, such as a presentence investigation report. Id.
In our view, bare allegations of misconduct in a presentencing report, without more, are insufficient to demonstrate that a defendant is "likely to engage in the future in one or more sexually oriented offenses." Statev. Wilson (Oct. 26, 2000), Cuyahoga App. No. 77530, unreported. See, also, State v. Austin (Aug. 2, 2000), Marion App. No. 9-2000-11, unreported (prior uncharged allegation of sexual abuse based on hearsay was unreliable due to the unsubstantiated nature of the allegation and its age).
As stated in State v. Thompson, (Apr. 1, 1999), Cuyahoga App. No. 73492, unreported:
 "In a model sexual predator determination hearing, the prosecutor and defense counsel would take care to identify on the record those portions of the trial transcript, victim impact statements, pre-sentence report and other pertinent aspects of the defendant's criminal and social history that both relate to the factors set forth in R.C. 2950.09(B)(2) and are probative of the second prong of R.C. 2950.01(E). Either side might present expert opinion by testimony or written report to assist the trial court in its determination when there is little information beyond the fact of the conviction itself. The trial court not only would then consider on the record the statutory factors themselves, but in addition would discuss in some detail the particular evidence and factors upon which it relies in making its determination. Finally, it would include evidentiary materials in the record for purposes of any potential appeal."
See also, State v. Knox (Aug. 1, 2000), Vinton App. No. 00CA538, unreported; State v. Hull (Jun. 29, 2000), Cuyahoga App. No. 76460, unreported; State v. Rocha (Dec. 10, 1999), Lucas App. No. L-99-1070, unreported; State v. Wimberly (Aug. 12, 1999), Cuyahoga App. No. 74652, unreported.
In the present case, the only evidence presented by the state, in addition to that presented at trial for the current conviction, was appellant's criminal history in the form of a presentencing report. This report listed convictions for various vehicular traffic violations dating from 1986 to 1999, failure to obey a police officer in 1986, loitering in 1987, and assault in 1988. Various other charges were listed for harassment, assault, and domestic violence from 1988 to 1997, all with dispositions unknown. Although an attempted rape charge was apparently filed by a former girlfriend in 1987, no conviction resulted from that incident and the only information relating to it came from a police report. Likewise, several domestic violence charges were listed, but were dismissed.
No psychological evaluations or expert testimony was presented. Other than the twelve year old attempted rape allegation, there is nothing in appellant's criminal history to show that any of the other incidents involved crimes or misconduct of a sexual nature. In our view, although appellant's criminal record may indicate he has a propensity for engaging in fights or committing traffic violations, there is nothing to indicate appellant's propensity to commit future sexual crimes. We further conclude that the better approach for a trial court, when determining a defendant's status as a sexual predator, is to require expert testimony in cases such as this where there is no history or attendant circumstances involving repeated sexual offenses.
While we do not wish to downplay the serious nature of appellant's conduct in the current conviction for rape, we do not believe that this conduct, by itself, necessarily demonstrates that appellant is likely to commit future sexual crimes. In our view, appellant should be classified as a sexually oriented offender, rather than a sexual predator. A sexually oriented offender is a person who has committed a "sexually oriented offense" as defined in R.C. 2950.01(D), and does not meet the definition of either a habitual sex offender or sexual predator. Accordingly, as a sexually oriented offender, appellant will still be required to comply with the registration and address verification provisions of R.C. 2950.04. See State v. Williams (2000), 88 Ohio St.3d 513. 519.
Based upon our review of the record, we conclude that the trial court erred in determining that the state established by clear and convincing evidence that appellant was likely in the future to engage in one or more sexually oriented offenses. Accordingly, appellant's third assignment of error is well-taken.
The judgment of the Wood County Court of Common Pleas is affirmed in part, reversed in part, and remanded for proceedings consistent with this decision. The cost of this appeal is assessed equally to both parties.
 ________________________ Melvin L. Resnick, JUDGE
James R. Sherck, J. and Richard W. Knepper, J. CONCUR.
[1] The victim's name has been changed to protect her privacy.
[2] We are cognizant that the Cook court stated that "the determination that defendant is a sexual predator is not against the manifest weight of the evidence." However, the court was reviewing the issues under a plain error standard. In the discussion leading up to that statement, the court consistently referred to the clear and convincing standard as the appropriate measure of the trial court's determination. Therefore, we will apply the clear and convincing standard required by R.C. 2950.09(B)(3).